Estado Libre Asociado de Puerto Rico
**TRIBUNAL DE APELACIONES**
**PANEL ESPECIAL**

| José L. Lebrón Rosa | | **REVISIÓN ADMINISTRATIVA** procedente del Departamento del Estado |
|---|---|---|
| Recurrente | | |
| vs. | KLRA202500287 | Caso Núm.: |
| | | Sobre: Negativa a Expedir Certificación de Prensa |
| Departamento de Estado | | |
| Recurrido | | Art. 2.24 de Ley 22-2000 |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón.

Rivera Colón, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 24 de marzo de 2026.

Comparece ante nos el señor José L. Lebrón Rosa, DBA Observaorx Press Comunitario (Sr. Lebrón Rosa o Recurrente), mediante recurso de revisión judicial. Solicitó la revocación de la Resolución emitida el 21 de marzo de 2025 por el Departamento de Estado (DE o Recurrido). Mediante esta determinación, el DE le denegó la solitud de Certificación de Prensa del Departamento de Estado.

Por los fundamentos que expondremos a continuación, se confirma el dictamen recurrido.

**I.**

El 16 de diciembre de 2024, el Sr. Lebrón Rosa presentó ante el DE una Solicitud de Certificación de Prensa. En la misma, detalló que, desde hace dos (2) años, laboraba Doing Business As (DBA) Observadorx Press Comunitario, el cual se destaca por hacer

Número Identificador

SEN2026 _____

reportajes relacionados a problemas ambientales, corrupción gubernamental, así como otros problemas sociales de Puerto Rico. Informó que el medio noticioso se transmitía a través de plataformas digitales como Facebook, Instagram y YouTube. Junto a su solicitud, acompaño una Declaración Jurada, su identificación como miembro de la Asociación de Periodistas Independientes, una Resolución del Tribunal Supremo de Puerto Rico,[1] y una carta de Observadorx Press Comunitario, emitida el 3 de diciembre de 2024.

Tras examinar su solicitud, el 21 de marzo de 2025, el DE emitió su Resolución mediante la cual denegó el petitorio del Recurrente. En su determinación, la Comisión de Certificaciones de Prensa consignó que, el Sr. Lebrón Rosa "puede continuar ejerciendo sus funciones sin la obtención de una certificación de prensa".

En desacuerdo, el 4 de abril de 2025, el Recurrente presentó una Solicitud de Reconsideración. Argumentó que la determinación emitida no cumplió con los requisitos establecidos en la Ley Núm. 38-2017, también conocida como la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, 3 LPRA sec. 9601 *et seq.* (LPAU). Además, solicitó la celebración de una vista evidenciaria, en vista de que la denegatoria afecta el ejercicio de su labor como periodista independiente. Sostuvo que, condicionar el ejercicio del periodismo a la aprobación de un tercero atenta contra su derecho de libertad de prensa. Más aun cuando se trata de su medio principal de vida.

Transcurrido el término de 15 días sin que el DE atendiera su petición de reconsideración, el 19 de mayo de 2025, el Sr.

---

[1] En la que se autoriza a Observadorx Press Comunitario a transmitir a través del PECAM en sus plataformas digitales. Véase MC-2024-0051.

Lebrón Rosa acudió ante este foro mediante recurso de revisión judicial. En el cual esgrimió la comisión de los siguientes errores:

> *Primer Error: Erró el Departamento de Estado al denegar al recurrente la certificación para solicitar la tablilla especial de prensa, al basar su decisión en una definición de "Miembro de la Prensa General Activa" contenida en el Reglamento 6336, la cual es ultra vires y nula por exceder la autoridad conferida por la Ley 22-2000.*

> *Segundo Error: Erró el Departamento de Estado al denegar al recurrente la certificación e identificación de prensa, al aplicar el Reglamento 6336, el cual es ultra vires por exceder la autoridad delegada, ya que la Ley 22-2000 no le confiere facultad para expedir identificaciones de prensa.*

> *Tercer Error: Erró el Departamento de Estado al denegarle certificado de prensa al recurrente por éste ser un periodista independiente que no labora para una empresa o corporación periodística, en violación a su derecho constitucional a la libertad de expresión y de prensa al aplicar un reglamento inconstitucional que limita ilegalmente quién puede ser reconocido como prensa.*

> *Cuarto Error: Erró el Departamento de Estado al emitir la Resolución que deniega la certificación de prensa al recurrente, en violación a la Ley de Procedimiento Administrativo Uniforme (LPAU), al omitir la celebración de una vista evidenciaría, resolver sin basarse en el expediente, emitir la resolución sin la firma de un funcionario autorizado y contravenir el principio de adjudicación imparcial.*

Por su parte, el 18 de junio de 2025, el Recurrido presentó su alegato en oposición.

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II.

### A.

La Sección 4.1 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico ("LPAU"), Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9671, permite que se solicite al Tribunal de Apelaciones la revisión de las decisiones administrativas. A esos efectos, es norma de derecho claramente establecida que los tribunales apelativos han de conceder gran

consideración y deferencia a las decisiones administrativas en vista de la experiencia y conocimiento especializado de la agencia. *Pagán Santiago, et al. v. ASR*, 185 DPR 341, 358 (2012); *T-JAC, Inc. v. Caguas Centrum Limited*, 148 DPR 70, 80 (1999); *Agosto Serrano v. F.S.E.*, 132 DPR 866, 879 (1993). Por lo tanto, quien alegue lo contrario tendrá que presentar evidencia suficiente para derrotar tal presunción, no pudiendo descansar únicamente en meras alegaciones. *Pacheco v. Estancias*, 160 DPR 409, 431 (2003).

La revisión judicial es limitada, ésta solo determina si la actuación administrativa fue una razonable y cónsona con el propósito legislativo o si por el contrario fue irrazonable, ilegal o medió abuso de discreción. *Mun. de San Juan v. J.C.A*, 149 DPR 263, 280 (1999); *T-JAC, Inc. v. Caguas Centrum Limited, supra*, a la pág. 84; *Com. Vec. Pro-Mej., Inc. v. J.P.*, 147 DPR 750, 761 (1999); *Fuertes y otros v. A.R.P.E.*, 134 DPR 947, 953 (1993). Las determinaciones de hechos y los procesos administrativos están cobijados por una presunción de regularidad y corrección. *Torres Santiago v. Dpto. Justicia*, 181 DPR 969, 100-1003 (2011).

La Sección 4.5 de la LPAU, 3 LPRA sec. 9675, establece que las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo. *Otero v. Toyota*, 163 DPR 716, 727 (2005); *Metropolitana S.E. v. A.R.P.E.*, 138 DPR 200, 213 (1995). La evidencia sustancial ha sido definida como aquella evidencia relevante que una persona razonable podría aceptar como adecuada para sostener una conclusión. *JP, Plaza Santa Isabel v. Cordero Badillo*, 177 DPR 177, 187 (2009).

La parte afectada por una determinación de hecho de una agencia, debe demostrar que existe otra prueba en el récord que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la

determinación de la agencia fue razonable, de acuerdo con la totalidad de la prueba que tuvo ante su consideración. Si no se demuestra la existencia de otra prueba, las disposiciones fácticas de una agencia deben ser sostenidas por el tribunal revisor. *Ramírez v. Depto. de Salud*, 147 DPR 901, 905 (1999). El propósito es evitar que los tribunales sustituyan irrazonablemente el criterio de la agencia especializada por el suyo propio.

Las cuestiones de derecho, contrarias a las de hechos, que no involucren interpretaciones efectuadas dentro del ámbito de especialización de la agencia son revisables en toda su extensión. *San Antonio Maritime v. P.R. Cement Co.*, 153 DPR 374, 396 (2001). En ese sentido, la LPAU dispone que serán revisables en todos sus aspectos por el tribunal. 3 LPRA sec. 9675. Véase *Vázquez et al. v. DACo*, 2025 TSPR 56, 216 DPR __ (2025). Esta revisión total no implica que los tribunales revisores tengan la libertad absoluta de descartar libremente las conclusiones e interpretaciones de la agencia. *T-JAC, Inc. v. Caguas Centrum Limited*, *supra*, a la pág. 81. Ahora bien, no se les aplica una deferencia automática a las interpretaciones que haga la agencia sobre el estatuto que administra, pues la interpretación de las leyes es una tarea inherentemente judicial. *JHV v. Negociado de la Policía*, 2025 TSPR 139, 217 DPR ___ (2025). En síntesis, los tribunales deben ejercer un juicio independiente al determinar si la agencia actuó dentro del marco de sus facultades, más no se debe otorgar la deferencia judicial simplemente porque la ley es ambigua. *Vázquez et al. v. DACo*, *supra*. Empero, ello no significa que los tribunales tienen libertad absoluta para descartar las conclusiones e interpretaciones del organismo administrativo. *Otero Rivera v. Bella Retail Group*, 214 DPR 473, 485 (2024); *Otero v. Toyota*, 163 DPR 716, 729 (2005).

Nuestro esquema jurídico establece que el tribunal revisor hará una evaluación a la luz de la totalidad del expediente. El Tribunal Supremo de Puerto Rico ha sido enfático al sostener que la deferencia reconocida a la decisión de una agencia administrativa cede cuando: (1) no está basada en evidencia sustancial; (2) el organismo administrativo ha errado en la aplicación de la ley, y (3) ha mediado una actuación irrazonable o ilegal. *González Segarra et al. v. CFSE*, 188 DPR 252, 278 (2013); *P.R.T.C. v. J. Reg. Tel. de P.R.*, 151 DPR 269, 281 (2000); *T-JAC, Inc. v. Caguas Centrum Limited, supra*, a la pág. 81.

**B.**

La Ley Núm. 22-2000, también conocida como la Ley de Vehículos y Tránsito, define la prensa general activa como "aquellas personas debidamente acreditadas por el Departamento de Estado de Puerto Rico que se dedican a la búsqueda de información para los medios noticiosos y para quienes esta ocupación constituye su principal medio de vida". 9 LPRA sec. 5001 inciso (83). Más adelante, la disposición legal establece que "[e]l Secretario dispondrá mediante reglamento todo lo concerniente a la expedición, uso, renovación y cancelación de dichos rótulos removibles". 9 LPRA sec. 5025.

En ese sentido, se encuentra vigente el Reglamento Núm. 6336 de 8 de agosto de 2001, conocido como "Reglamento para Establecer la Expedición, Renovación, Cancelación y el Uso de las Certificaciones de Prensa" (Reglamento 6336). Este define al miembro de la prensa general activa como:

> *Jefes de redacción que se desempeñan también como reporteros, reporteros, fotoperiodistas que formen parte del personal del Departamento de Noticias de una Empresa o Corporación periodística, registrada en el Departamento de Estado de Puerto Rico y que ejerzan el periodismo escrito, radial o televisivo en Puerto Rico, dedicado a la búsqueda, elaboración, edición o difusión de la noticia de interés general, que se desempeñe en sus labores de forma directa y consistente para dicha*

*empresa o Corporación y cuya prestación de servicios está certificada por la parte servida y para el cual esta ocupación constituye su medio principal de vida y periodistas activos que se desempeñan como tal para varios medios de comunicación a tiempo parcial o como independientes, conocidos como "Free Lance".*

En su Art. IV(D) se especifica que, "[l]os periodistas que laboran como independientes o "Free Lance" deberán presentar una declaración jurada que certifique que están laborando para un medio o empresa periodística". Más adelante indica que, de negarse una solicitud de Certificación la Oficina expresará las razones para ello. Por último, el Art. VI señala que

*En caso de que se negare la otorgación de una certificación a un solicitante, éste tendrá derecho a solicitar una reconsideración a la decisión y podrá solicitar que se celebre una vista donde pueda presentar prueba a favor de su solicitud, a tenor con la dispuesto en la Ley 170, del 12 de agosto de 1988, según enmendada.*

En el caso *Disidente Univ. de PR v. Depto. de Estado*, 145 DPR 689, 698 (1998), el Tribunal Supremo determinó que la otorgación de una tablilla especial de prensa no impide en el ejercicio de libertad de prensa. Además, sostuvo que, "publicar en un periódico o tener acceso a la información no depende de que se expida tal certificación". *Id.* Es decir, los requisitos establecidos en la legislación aprobada no activan el análisis a la luz de un escrutinio estricto, pues en nada constituye una censura al contenido o penalización por las ideas o las expresiones. *Id.* a la pág. 699. Más bien se trata de un beneficio socioeconómico que promueve y facilita para quienes han hecho del periodismo su principal medio de vida. *Id.* a las págs. 699-700. Para finalizar, expresó que:

*De exigirse la entrega de la tablilla especial de prensa a todo aquel que reclame ser periodista [...] sobrecargaría los escasos y limitados espacios de estacionamiento en el país y, a la postre, afectaría detrimentalmente la prensa diaria. No hay duda de que limitar la concesión de certificaciones de Prensa y de tablillas especiales es un medio que razonablemente promueve ese interés*

*identificado. La clasificación, pues, está relacionada razonablemente a dicho interés. Id., a la pág. 700.*

## C.

La sección 3.14 de la LPAU establece que la orden o resolución final:

> *deberá incluir y exponer separadamente determinaciones de hecho si éstas no se han renunciado, conclusiones de derecho, que fundamentan la adjudicación, la disponibilidad del recurso de reconsideración o revisión según sea el caso. La orden o resolución deberá ser firmada por el jefe de la agencia o cualquier otro funcionario autorizado por ley. La orden o resolución advertirá el derecho de solicitar la reconsideración ante la agencia o de instar el recurso de revisión como cuestión de derecho en el Tribunal de Apelaciones, así como las partes que deberán ser notificadas del recurso de revisión, con expresión de los términos correspondientes. Cumplido este requisito comenzarán a correr dichos términos.* 3 LPRA sec. 9654.

La disposición legal que precede persigue varios objetivos, entre ellos, proporciona a los tribunales la oportunidad de revisar adecuadamente la decisión administrativa. *Rivera Santiago v. Srio. de Hacienda*, 119 DPR 265, 276 (1987). Además, fomenta a que la agencia adopte una determinación cuidadosa y razonada dentro de los parámetros de su autoridad y discreción. *Id.* a la pág. 277. Por otra parte, permite que la parte afectada comprenda la decisión de la agencia, y así, mejor informada, decidir si acude al foro judicial o ataca la decisión. *Id.* Igualmente, ello promueve la uniformidad intraagencial. *Id.* Por último, evita que los tribunales "nos apropiemos de funciones que corresponden propiamente, bajo el concepto de especialización y destreza (expertise), a las agencias administrativas". *Id.* a las págs. 277-278.

## III.

En el caso que nos ocupa, el Sr. Lebrón Rosa cuestiona la determinación del DE bajo la premisa de que la denegatoria de la Certificación de Prensa atenta contra su derecho a la libertad de expresión y su libertad de prensa. En síntesis, el Recurrente

establece que la actuación del Recurrido excede las facultades establecidas en la ley orgánica, es decir, la Ley Núm. 22-2000. De igual forma, argumenta que la disposición legal antes mencionada no le confiere al DE la facultad para expedir identificaciones de prensa. Por ende, el Reglamento 6336 carece de validez jurídica y debe ser considerado nulo.

Por otro lado, el Sr. Lebrón Rosa arguye que la definición provista en el reglamento impone requisitos adicionales no contemplados en su ley habilitadora. Insiste que el estatuto no contempla el ejercicio de la prensa independiente, toda vez que se le impone la carga de laborar para un medio noticioso. Además, sostiene que la denegatoria de esta identificación sin justificación alguna, restringe de forma directa su labor y valida un discrimen que incide en su libertad de prensa. Por estar íntimamente relacionados, discutiremos los primeros tres errores en conjunto.

Para analizar esta primera controversia, nos vemos obligados a analizar la ley habilitadora en virtud de la cual se aprobó el Reglamento 6336. La legislación vigente definió la prensa general activa como "aquellas personas **debidamente acreditadas por el Departamento de Estado de Puerto Rico** que se dedican a la búsqueda de información para los medios noticiosos y para quienes esta ocupación constituye su principal medio de vida". (Énfasis nuestro). 9 LPRA sec. 5001 Inciso (84). Posteriormente, el Art. 2.24 de la ley expresamente establece que "[e]l Secretario dispondrá mediante reglamento todo lo concerniente a la expedición, uso, renovación y cancelación de dichos rótulos removibles". *Id.* sec. 5025 (e). Según el Reglamento 6336, se considera prensa general activa los:

> *Jefes de redacción que se desempeñan también como reporteros, reporteros, fotoperiodistas que formen parte del personal del Departamento de Noticias de una Empresa o Corporación periodística, registrada en el Departamento de Estado de Puerto Rico y que ejerzan el*

*periodismo escrito, radial o televisivo en Puerto Rico, dedicado a la búsqueda, elaboración, edición o difusión de la noticia de interés general, que se desempeñe en sus labores de forma directa y consistente para dicha empresa o Corporación y cuya prestación de servicios está certificada por la parte servida y para el cual esta ocupación constituye su medio principal de vida y periodistas activos que se desempeñan como tal para varios medios de comunicación a tiempo parcial o como independientes, conocidos como "Free Lance".*

Recordemos que, según la presunción de constitucionalidad que poseen las leyes, este Tribunal no juzgará la constitucionalidad de un estatuto si puede disponer de la controversia bajo otros fundamentos. *Aut. Puertos PR v. Total Petroleum Puerto Rico et al.*, 210 DPR 16, 29 (2022). Tampoco debemos olvidar que nuestro Tribunal Supremo categorizó la concesión de esta tablilla especial como un beneficio socioeconómico cuyo análisis acarrea un escrutinio racional.[2]

Examinado el escrito del Sr. Lebrón Rosa, sus argumentos no nos mueven a apartarnos de la norma previamente establecida por nuestro máximo foro judicial. Es preciso señalar que el objetivo de esta legislación es facilitar los estacionamientos a los periodistas y librarlos de los inconvenientes cotidianos en el área del tránsito vehicular. *Disidente Univ. de PR v. Depto. de Estado*, *supra*, a la pág. 700. La argumentación del Recurrente va dirigida a varias circunstancias en las que se le negó la entrada a ciertas actividades gubernamentales. Más no están relacionadas al propósito que persigue el estatuto. Conforme se dispuso en la Resolución, la denegatoria de la certificación no es un impedimento a su ejercicio de la libertad de prensa. Lo cierto es que la otorgación de esta tablilla en nada incide en su derecho a la libertad de prensa, pues no se le está imponiendo limitación alguna en su contenido. Tal hecho queda evidenciado en las Resoluciones emitidas por el Tribunal Supremo en las que se le

---

[2] Véase *Disidente Univ. de PR v. Depto. de Estado*, 145 DPR 689 (1998).

autoriza la difusión de contenido para la transmisión de los procedimientos judiciales.

Referente a sus planteamientos sobre la imposición de requisitos adicionales no contemplados en la ley orgánica, de hecho, la propia definición de la Ley Núm. 22-2000 dispone que se considerará prensa general activa aquella que haya sido debidamente acreditada por el Departamento de Estado. Por ende, el análisis de esta definición permite que el Recurrido imponga, mediante un reglamento, cómo se identificará al personal que compone la prensa general activa según contemplado en la Ley de Vehículos y Tránsito.

Del propio reglamento impugnado se atienden aquellos casos en los que el periodista se reconoce como prensa independiente o "Free Lance". Específicamente el Art. IV Requisitos para Solicitar Certificación de Prensa, inciso (D) dispone que "[l]os periodistas que laboran como independientes o "Free Lance" deberán presentar una declaración jurada que certifique que están laborando para un medio o empresa periodística". Es decir, ni el estatuto ni el reglamento obstaculizan o excluyen la labor de las pequeñas empresas. Más bien promueven su labor y la facilitan para quienes han hecho del periodismo su principal medio de vida. *Disidente Univ. de PR v. Depto. de Estado, supra.* a la pág. 699. Únicamente cuando exista un trato arbitrario e injustificado, que constituye una carga para el periodista, viola la cláusula de libertad de prensa, mas no aquel trato que persigue beneficiar al mayor número de personas posibles. *Id.*

De igual forma, el Tribunal Supremo razona que de exigirse la entrega de la tablilla especial a todo el que reclame ser periodista, incluyendo al que interviene de alguna forma en la difusión o análisis de información, sobrecargaría los limitados espacios de estacionamiento en el país. *Id.*, a la pág. 700.

Reiteramos que, los argumentos del Sr. Lebrón Rosa no nos mueven a apartarnos de la norma establecida por nuestra Corte Suprema.

Superado el análisis de la validez del Reglamento 6336, nos corresponde analizar la Resolución recurrida. En su último señalamiento de error, el Recurrente alega que la determinación emitida por el DE es contraria a las disposiciones de la LPAU. Argumenta que la misma carece de la firma de un funcionario autorizado, que la determinación no está fundamentada en el expediente y que no configuró una adjudicación imparcial en virtud de los componentes del Comité Evaluador.

Según la LPAU, las ordenes o resoluciones finales deben contener: (1) determinaciones de hechos, si estas no se han renunciado; (2) conclusiones de derecho que fundamentan la adjudicación; (3) la disponibilidad del recurso de reconsideración ante la agencia o el recurso de revisión en el Tribunal de Apelaciones; (4) deberá ser firmada por el jefe de agencia o cualquier otro funcionario autorizado por ley. 3 LPRA sec. 9654.

En lo referente a la Resolución recurrida, notamos que la misma cuenta con las determinaciones de hechos y las conclusiones de derecho que fundamentan la determinación de la agencia. Además, advierte sobre su derecho a solicitar una reconsideración de la determinación de la agencia. Por último, la misma se encuentra firmada por la señora Marilú Santiago Díaz, Directora de Comunicaciones y Prensa. Finalmente, del expediente se desprende que la denegatoria de su solicitud fue a la luz de que el Recurrente no labora para un medio noticioso debidamente registrado en el Departamento del Estado. Por lo que, es forzoso concluir que la Resolución cumplió con los requisitos mínimos exigidos por la LPAU.

En cuanto al resto de los planteamientos levantados por el Sr. Lebrón Rosa concluimos que este no nos colocó en posición para evaluarlos. Primeramente, arguye que la determinación fue contraria a las disposiciones de la LPAU porque los miembros de la comisión evaluadora no son funcionarios del Departamento del Estado, sino que son periodistas que fueron nombrados para formar parte del comité. Lo cierto es que, el Recurrente no demuestra cómo esta disposición contraviene los requisitos mínimos predicados en la LPAU. Igualmente, en el cuestionamiento de la firma de la Directora de Comunicaciones y Prensa, se limitó a mencionar que esta no era la jefa de agencia en aquel momento.

En resumen, no tienen méritos los argumentos del Sr. Lebrón Rosa. Por consiguiente, se sostiene la validez del Reglamento 6336, Reglamento para Establecer la Expedición, Renovación, Cancelación y el Uso de las Certificaciones de Prensa de 8 de agosto de 2001. Además, se confirma la Resolución emitida por el Departamento de Estado, mediante la cual se deniega la solicitud de Certificación de Prensa.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte íntegra de esta Sentencia, confirmamos la Resolución recurrida emitida por el Departamento de Estado.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

El Juez Adames Soto disiente con voto escrito.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

| JOSÉ L. LEBRÓN ROSA DBA OBSERVADORX PRESS COMUNITARIO Recurrente | | *Revisión Judicial* procedente del Departamento de Estado |
|---|---|---|
| v. | KLRA202500287 | Sobre: Solicitud y Negativa a Expedir Certificación de Prensa Art. 2.24 Ley 22-2000 |
| DEPARTAMENTO DE ESTADO Recurrido | | |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

## VOTO DISIDENTE DEL JUEZ NERY E. ADAMES SOTO

Bastó una sola lectura a la denominada "Resolución" que nos ha tocado revisar para percatarme de sus irreparables carencias *vis a vis* los requerimientos legales que obligan a las agencias administrativas a incluir y exponer separadamente determinaciones de hechos y conclusiones de derecho que fundamentan la adjudicación. Por lo mismo, juzgo que en este caso tuvimos la oportunidad de instruir al Departamento de Estado (DE) sobre los requerimientos legales acerca de los dictámenes administrativos al disponer de los derechos de los ciudadanos, de modo que no se le pueda imputar arbitrariedad. Además, también debimos afirmar la imposibilidad de este foro intermedio de revisar dictámenes administrativos faltos de las referidas determinaciones de hechos y aplicación del derecho pertinente. Por estas razones, muy respetuosamente, disiento.

a.

i.

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9601 *et seq.*, dispone el alcance de la revisión judicial de las determinaciones de las agencias. Tanto la referida ley, como la jurisprudencia aplicable, establecen que la función revisora de las decisiones administrativas concedida a los tribunales apelativos consiste esencialmente en determinar si la actuación de la agencia fue dictada dentro de las facultades que le fueron conferidas por ley y si la misma es legal y razonable. *T-JAC v. Caguas Centrum Limited*, 148 DPR 70, 80 (1999).

Las decisiones de los foros administrativos están investidas de una presunción de regularidad y corrección. *Pérez López v. Departamento de Corrección,* 208 DPR 656 (2022); *García v. Cruz Auto Corp.*, 173 DPR 870, 892 (2008); *Vélez Rodríguez v. Administración de Reglamentos y Permisos,* 167 DPR 684, 693 (2006); *Rivera Concepción v. A.R.Pe.*, 152 DPR 116, 123 (2000). La presunción de corrección que acarrea una decisión administrativa deberá sostenerse por los tribunales, a menos que la misma logre ser derrotada mediante la identificación de evidencia en contrario que obre en el expediente administrativo. *E.L.A. v. P.M.C.*, 163 DPR 478, 488-490 (2004); *Misión Ind. P.R. v. J.P.*, 146 DPR 64, 130 (1998).

Al momento de revisar una decisión administrativa, el criterio rector para los tribunales será la razonabilidad en la actuación de la agencia. *Rebollo v. Yiyi Motors,* 161 DPR 69, 76 (2004). Conforme a la cual, **habrá que determinar si la actuación de la agencia fue arbitraria, ilegal, caprichosa o tan irrazonable que constituyó un abuso de discreción**. (Énfasis provisto). *Mun. De San Juan v. CRIM*, 178 DPR 164, 175 (2010); *Asoc. Tulip/Monteverde v. J.P.*, 171 DPR 863, 873



(2007). Por tanto, la revisión judicial de una determinación administrativa se circunscribe a determinar si: (1) el remedio concedido por la agencia fue apropiado; (2) **las determinaciones de hechos realizadas por la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo, y (3) las conclusiones de derecho fueron correctas.** Sec. 4.5 de la LPAU, 3 LPRA sec. 9675; *Torres Rivera v. Pol. de PR*, 196 DPR 606, 626-627 (2016). (Énfasis provisto).

ii.

La Sección 3.14 de la LPAU, 3 LPRA sec. 9654, ordena que una orden o resolución final **deberá incluir y exponer separadamente determinaciones de hechos, conclusiones de derecho que fundamentan la adjudicación y la disponibilidad del recurso de reconsideración o revisión según sea el caso**. (Énfasis provisto). Sobre lo mismo, en *Crespo Claudio v. O.E.G.*, 173 DPR 804, 812-813 (2008), el Tribunal Supremo de Puerto Rico expresó:

> Ahora bien, para que una orden o resolución sea considerada final, se requiere que la misma ponga fin al caso ante la agencia y que tenga efectos sustanciales sobre las partes. [...] Además, para que dicha decisión tenga carácter de finalidad **debe incluir determinaciones de hecho, conclusiones de derecho y una advertencia sobre el derecho a solicitar reconsideración o revisión judicial**. 3 L.P.R.A. sec. 2164. Igualmente, la misma debe estar firmada por el Jefe de la Agencia o por un funcionario autorizado [...] *Id.* (Énfasis provisto).

b.

Me permito iniciar reconociendo que la intervención estatal que acontece cuando el DE determina a quién expedir una *Certificación de prensa* está salpicada de consideraciones sobre el derecho fundamental al ejercicio efectivo de la libertad de prensa. Aunque los derechos constitucionales no son absolutos, no cabe duda de que permitir al Estado estrechar la puerta por la cual entren personas a ejercer el derecho a la prensa, mediante requerimientos administrativos que efectivamente lo obstaculicen, podría diluir o tornar liviano el rango



constitucional que ostenta. Debe mostrarse aún más rigor cuando se toma en consideración que una de las labores fundamentales que entraña la libertad de prensa es, precisamente, la de fiscalizar las ejecutorias gubernamentales, de modo que se facilite la exposición de tales quehaceres al País, a través de interlocutores que no respondan o se deban de alguna forma a los intereses estatales.

Entonces, resulta inexplicable cómo el DE se permitió emitir una *Resolución* tan deficiente en términos generales, pero, en particular, a la luz de los requerimientos mínimos que exige la LPAU, en consideración al debido proceso de ley. Contrario a lo que afirma el Procurador en su escrito, no puedo refrendar su opinión de que dicho dictamen cumplió con incorporar determinaciones de hechos, exposición de derecho y la aplicación de este a aquél.

En cuanto a los hechos que debieron particularizarse en el dictamen administrativo recurrido, más allá de informar que el recurrente instó una *Solicitud de certificación de prensa*, **ningún otro dato se incluyó en la *Resolución* recurrida sobre la persona o circunstancias de quien solicitó la certificación**. ¿Dónde están las determinaciones de hechos? Bien podría haberse informado, por ejemplo, que el recurrente presentó, junto a la *Solicitud de Certificación de Prensa*, varios documentos, entre estos, una declaración jurada, con el propósito de establecer su derecho como periodista independiente, copia de un certificado de registro expedido por el DE, referente a la Asociación de periodistas independientes, e identificación del recurrente, emitida por dicha Asociación, entre otros. De nada de esto se dio noticia al lector.

A pesar de la ausencia de los referidos elementos fácticos en la "Resolución" que sirvieran para brindar alguna perspectiva sobre el solicitante y sus circunstancias, luego en la presunta "aplicación de Derecho" solo se nos informó que la denegatoria al expedir el *certificado*

solicitado tuvo como causa que el Reglamento 6336[1] dispone que "la persona elegible para una certificación de prensa **debe laborar de periodista en un Departamento de noticias**".[2] (Énfasis provisto). A partir de lo cual no cabe otra alternativa que *especular*, a falta de determinaciones de hechos o mejor explicación, que el señor Lebrón Rosa no pertenecía a un *Departamento de noticias*.[3] Menos aún se detuvo el DE a considerar otras posibles causas para emitir el Certificado aludido, a partir de la misma reglamentación citada, como es el caso de los periodistas independientes o *free lancers*.

Por causa de tales deficiencias en la *Resolución* recurrida, estamos impedidos de realizar nuestra función revisora de manera cabal, en tanto carecemos de elementos para evaluar si la determinación administrativa fue *razonable*, y con ello, que merezca el grado de deferencia que observamos hacia estas. En igual sentido, al examinar lo plasmado en el dictamen no podemos precisar si: (1) el remedio concedido fue apropiado; (2) las determinaciones de hechos realizadas por la agencia estuvieron sostenidas por evidencia sustancial que obre en el expediente administrativo y; (3) las conclusiones de derecho fueron correctas. Sec. 4.5 de la LPAU, 3 LPRA sec. 9675; *Torres Rivera v. Pol. de PR*, supra, págs. 626-627. Nótese que, a pesar de que el incumplimiento de la *Resolución* no fue parte esencial de los errores alzados, se trata de defectos que nos impiden valorar el curso decisorio de la agencia y decidir sobre su corrección.

Las agencias de gobierno no están autorizadas a tomar decisiones arbitrarias al afectar derechos que la ciudadanía reclama, y por ello la ley requiere mostrar la racionalidad de sus decisiones a través de la



---

[1] *Reglamento para establecer la expedición, renovación, cancelación y el uso de las Certificaciones de prensa*, Reglamento Número 6336, de 8 de agosto de 2001.

[2] Apéndice del recurso de revisión judicial, pág. 8.

[3] En su escrito el Procurador reitera que la denegatoria se debió a que Observadorx Press Comunitario no aparece registrado en el DE. Contrario a ello, no logramos identificar en ninguna parte de la Resolución del DE, que siquiera se mencione a dicha corporación, como tampoco se hace mención alguna de que la denegatoria se debiera *a la falta de registración en el DE*. La falta de datos mínimos en la Resolución es evidente.

redacción de resoluciones que contengan los mínimos requeridos discutidos, que aquí no aprecio fueran cumplidos. A tenor, hubiese ordenado la devolución del asunto al DE para que emitiera una Resolución que se atuviera a los requerimientos de la LPAU, y así estar en posición de aquilatar su razonabilidad. Por las razones expuestas, respetuosamente disiento.

En San Juan, Puerto Rico, a 24 de marzo de 2026.


Nery Enoc Adames Soto
Juez de Apelaciones